ROBERT BRUNTON STUDIOS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7447. Promulgated March 6, 1929.

*Ralph Smith, Esq.,* for the petitioner.
*Maxwell E. McDowell, Esq.,* for the respondent.

OPINION.

TRUSSELL: The deficiency notice dated July 27, 1925, and which is made a part of the petition filed, asserts deficiencies for the three calendar years 1918, 1919, and 1920, against the "Robert Brunton Studios, Inc., 5341 Melrose Ave., Los Angeles, Calif."

There are two issues presented for decision in this appeal—(a) what amounts, if any, may be included in petitioner's invested capital for the taxable years involved as representing assets stated to consist of an option to purchase certain tangible assets, together with an equity in such assets represented by payments made under the option, the good will of an individual business and three contracts, all of this property having been acquired for stock, and (b) whether or not a deduction from gross income is allowable on account of exhaustion of such assets.

A decision on the first issue requires little discussion. Much testimony has been introduced with respect to the value of the assets in question but value in this instance is not the basis for computation of invested capital, as the acquisition of these assets was from an individual for stock issued in an amount in excess of 50 per cent of the total authorized capital stock of the corporation, and section 331 of the Revenue Act of 1918 applies, limiting the amount to be included in invested capital on account of the assets to their cost to the previous owner from whom acquired.

The record shows no cost to Robert Brunton of the assets in question, other than payments totaling $41,062.70 made by him on the purchase price of the property covered by the option to purchase. No question is raised as to the action taken by respondent in respect to the equity in this property represented by the sum of these payments, its full cost having been allowed by him. This asset is the only one of the several acquired for the stock in question which shows a cost to the previous owner and respondent's determination of invested capital is approved.

The second issue presents a different question, as the values of assets, allowable for purpose of computation of deductions from income on account of exhaustion, under section 234 (a) (7) of the Revenue Act of 1918, are not subject to the limitations imposed by section 331 of that Act. *Strong, Hewat & Co.*, 3 B. T. A. 1035; *Kennedy Construction Co.*, 4 B. T. A. 276.

Let us consider the assets separately. A total of 149,993 shares of stock of a par value of $149,993 was issued for four assets, one of these being an equity in property of $41,062.70, representing cash payments already made on account of the purchase price. To this asset the corporation allotted a book value of $41,062.70. To the remaining three assets the corporation allotted the balance of the stock issue at par in the sum of $108,930.30, divided as follows:

| | |
|---|---|
| Good will | $50,000.00 |
| Contracts | 23,930.30 |
| Option to purchase | 35,000.00 |
| | 108,930.30 |

If these values are provable as of the date of acquisition and the assets are depreciable in character, petitioner is entitled to deduction of a reasonable allowance for exhaustion. *Strong, Hewat & Co., supra; Troxel Mfg. Co.,* 1 B. T. A. 653; *East Market Street Hotel Co.,* 11 B. T. A. 796.

Petitioner's insistence is that the asset described as good will and which was acquired for 50,000 shares of stock issued was not the good will of the old business of Robert Brunton Co. but was a contract made by Robert Brunton to give his entire service to the corporation for a period of two years, with option given the latter for two years additional, and that the limitation of $60,000 per year placed on the aggregate salaries of all officers of the corporation by that agreement gave the corporation his services at a figure greatly below what he might expect to receive from other companies. It is insisted that although this item is designated as good will it really represents a contract for service to be rendered which had a great value above the salary to be paid and that the period of that service was in fact three years and this gave a basis upon which its value may be depreciated.

We are satisfied from the record that Brunton was a man of great ability and experience in his profession, with a fine reputation, personal influence and good will. There is no doubt that his services were of great value to the corporation, probably in excess of the salary he drew. However, all other questions aside, the record shows clearly that this contract for services, which petitioner insists constituted the value of the item of good will and was the basis of its estimate of $50,000 ascribed to that value, was not acquired for the issue of stock in question. Brunton was in no way obligated to render service to the corporation as a consideration of the stock received. The contract for his services was executed on October 4, 1918, more than a month after the sale and transfer to the corporation of the assets in question for 149,993 shares of stock, and is shown to have been entered into as one of the considerations for the purchase of 50,000 shares of treasury stock at par by two wealthy investors, Hutton and Danzinger. Brunton was the holder of three-fifths of the corporate stock and it was essential to obtain cash capital and desirable to interest wealthy investors who would give financial strength to the corporation. Hutton and Danzinger were of this character, but, as a condition of their investment, they required of Brunton a contract to serve the corporation for a definite term and a share of his stockholdings as a bonus. Petitioner only claims a value for the item of good will as a result of the contract for service, and this we find was not acquired for the stock issued, but was an asset acquired later without cost to the corporation, and

any value which it might have is accordingly not the basis for a deduction for exhaustion. *Automatic Fire Protection Co.*, 3 B. T. A. 1267; *First State Bank*, 5 B. T. A. 1176; *Kennedy Construction Co.*, *supra.*

Aside from this question, however, the record shows that the asset actually acquired for this issue of 50,000 shares of stock was not Brunton's contract of service but the good will of the old business known as "Robert Brunton Company." The contract detailing the transaction describes it in clear and unmistakable terms as:

6th. Generally the Good Will of Business of the business of said Robert Brunton heretofore conducted under the name and style of Robert Brunton Company in the manufacture and production of said motion pictures.

The proof also gives a picture of the motion picture industry, and this business in particular, which shows that good will existed and had a very definite value. In fact we have no doubt that its value was equal to the par value of the 50,000 shares of stock issued therefor, but such conclusion does not make a loss in value of that asset due to the death of Robert Brunton the subject of a deduction under section 234 (a) (7) of the Revenue Act of 1918 in arriving at net income.

The three contracts for production of motion pictures which Brunton assigned the corporation as one of the considerations for the issue of 149,993 shares of stock and to which the latter allocated $23,930.30 par value of the stock issued, and which value it now seeks to prove and to be allowed to depreciate, are shown to our satisfaction to have had an intrinsic value. Moreover, the action of the officers of the corporation in the exercise of their best judgment in placing a value of $23,930.30 on these contracts when acquired, although not sufficient in itself, in this instance, to carry the burden of proof of such value, is evidence of actual value. *Aluminum Flake Co.*, 6 B. T. A. 1193.

These contracts provided in the case of the Pathe Company for two pictures at $15,000 each, with a conditional bonus in each case of $3,000. The other contracts provided for rental of the studio to the producing companies for $500 per week and properties at a percentage of their cost and for reimbursement of the corporation at cost plus 10 per cent profit for any additional labor and material expended by it. The use of the properties of the corporation under these latter contracts was not exclusive, the corporation reserving the right to contract with other companies for their use concurrently and to use them itself during this time in the production of motion pictures. Under these latter contracts there was no possibility of loss to the corporation. They meant an absolutely certain income, the amount of which was dependent upon the time to produce the

pictures and the additional amount of scenery, sets, etc., which the corporation would be required to construct at the expense of the producer, and these conditions appear to us to be ones which could be calculated in advance with reasonable accuracy by the officers of the corporation. In other words, it appears to us that at the time when these officers placed a value of $23,930.30 on these contracts the facts were in their possession upon which men of the character and experience that the record shows them to be could have made a correct valuation. Certain of these officers testified at the hearing as to their valuation of the contracts and as to the reasonableness of that valuation in their opinion, both in the light of the facts then existing and now known after performance of the contracts.

The net profit from these contracts is not shown, but it does appear in evidence that from the Pathe Company and Helen Keller Co. contracts, gross income of $24,095.52 and $57,000 was received during the balance of the calendar year 1918, and it is very apparent from the record that the operations of the corporation were profitable from its inception.

We are of the opinion that petitioner has sustained sufficiently the burden of proof that the contracts in question had a reasonable value of $23,930.30. It appears that these contracts were performed in the calendar years 1918 and 1919, and the value assigned them is the basis for the deductions for exhaustion over those years, as made by petitioner.

The remaining question pertains to the asset consisting of an option to purchase the properties of the Paralta Studios, Inc., acquired by the Arizona corporation from Brunton, and to which it ascribes a value of $35,000 on its books, balancing thereby a similar amount at par of the total stock issued to Brunton and associates.

In respect to this item there is no proof as to a value for the property represented by the option to purchase held by the Paralta Studios, Inc., on the real property which it leased, which option was included in the assets covered by the option to purchase given Brunton by that company, but there is ample proof that the studio facilities and equipment had a value in excess of the $35,000 plus the option price of $125,000. This property is shown to have cost the Paralta Studios, Inc., a sum very largely in excess of $125,000 and the payment of that price under the option secured it clear of indebtedness. Its value was placed by witnesses in the neighborhood of $200,000.

We conclude that the option to purchase had a reasonable cash value of $35,000 when acquired by Brunton from the Paralta Studios, Inc., under the proof showing that the property covered by it was worth that sum in excess of the option price of $125,000 or $160,000.

Robert Brunton, however, exercised the option and paid $41,062.70 on the purchase price and what the Robert Brunton Studios, Inc., acquired for the issuance of stock in the amounts of $35,000 and $41,062.70 to Brunton was the $160,000 property itself subject to an indebtedness thereon of $84,937.30 which the corporation thereafter paid off. This total of $160,000 represents the cost of these studio facilities and equipment in cash and stock to the corporation and this total is subject to depreciation for the taxable years in question. There appears to be no issue as to rate of depreciation upon the property.

The deficiencies will be redetermined in accordance with the foregoing findings of fact and opinion.

Reviewed by the Board.

*Judgment will be entered pursuant to Rule 50.*

STERNHAGEN concurs in the result.

---

SIEFKIN, dissenting: The findings of fact in these proceedings show that Robert Brunton Studios, Inc., the Delaware corporation, did not exist until 1920 and that it acquired the assets and liabilities of the Arizona corporation of the same name, " and the latter thereupon suspended."

It seems to me that we lack jurisdiction to pass upon the deficiencies asserted against the Arizona corporation, which must be for the years 1918 and 1919 (and possibly part of the year 1920). Neither the statute nor the rules of the Board permit a joint petition or a petition by other than the taxpayer. Whichever corporation filed the petition in this proceeding may require us to pass upon its tax liability, but we can not go further and pass upon the liability of someone other than the petitioner. The petition in Docket No. 7477 is verified by the president of United Studios, Inc., the same corporation as Robert Brunton Studios, Inc., the Delaware corporation, except for the change of name.

The verification reads:

M. C. LEVEE, being duly sworn, says that he is the President of the petitioner above named (name changed since 1920 from Robert Brunton Studios, Inc. to United Studios, Inc.) ; that as such officer and because of his connection and activities in the business and affairs of the Robert Brunton Studios, Inc., an Arizona company, and the Robert Brunton Studios, Inc., a Delaware company, he is thoroughly familiar with the situation brought about by the proposed action of the Commissioner of Internal Revenue resulting from audit of the corporation's books and records for the years 1918, 1919 and 1920; * * *

I think it is obvious that the Delaware corporation is attempting to obtain a redetermination of the deficiency asserted against the

Arizona corporation. I believe the proceeding in Docket No. 7447 should be dismissed for lack of jurisdiction.

MARQUETTE, TRAMMELL, ARUNDELL, VAN FOSSAN and MURDOCK agree with this dissent.

*Ralph Smith, Esq.*, for the petitioner.
*Maxwell E. McDowell, Esq.*, for the respondent.